GATEWAY AVIATION, INC., et al.,
Plaintiffs-Appellants,

v.

CESSNA AIRCRAFT COMPANY et al.,
Defendants-Respondents.

No. 39337.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Dec. 5, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 16, 1979.

M. Harvey Pines, Schramm, Pines & Marshall, Clayton, for plaintiffs-appellants.

F. Douglas O'Leary, St. Louis, Ronald Morie, Clayton, Emmett M. O'Brien, St. Louis, Schechter & Zerman, David V. Collignon, Clayton, for defendants-respondents.

CRIST, Judge.

Plaintiffs, Gateway Aviation, Inc. and Paul and Ellen Silverstein, guarantors, sued defendant, Automatic Equipment Leasing Corporation, for tortious conversion of their airplane. Defendant counterclaimed for a deficiency on the resale of such airplane after its repossession for default. In a court tried case, defendant won on all counts and plaintiffs appeal.

We affirm the judgment against plaintiffs on their claim. We reverse the deficiency judgment in favor of the defendant in the sum of $97,437.00, for the reason that plaintiffs were not given prior notice of the private sale of their airplane by defendant.

Gateway Aviation, Inc. (hereinafter referred to as "Gateway") was incorporated for the purpose of providing an air taxi service. Gateway then entered into two agreements with defendant, the effect of which was to provide for a secured sale of a Cessna aircraft. The sales price, plus financing, was to be paid in 96 equal monthly installments of $3,681.57 each.

Gateway took possession of the airplane and made ten such monthly installments from May, 1969 through February, 1970. During this time the airplane required frequent repairs. By their agreement, Gateway was obligated to make repairs. Gateway defaulted on its March and April, 1970 installments after Gateway warned defendant that no payments would be made unless the problems with the airplane were resolved. Defendant's response was that if the payments were not then made it would repossess. Gateway commenced this litigation in March, 1970. Plaintiffs later dismissed as to Cessna Aircraft Company, and others, leaving defendant as the sole party defendant.

On April 30, 1970, plaintiffs tendered a check for the March and April installments. Defendant, however, demanded full payment of all installments. Payment in full was not made, and defendant repossessed the airplane on July 8, 1970. At the time of repossession, Gateway had, in violation of the agreements, permitted the federal license to operate the airplane to lapse and had not paid the insurance policy premium. The airplane had not been maintained by Gateway in a condition to be operated for air taxi service.

Defendant expended funds for repairs, maintenance and insurance to prepare the airplane for resale, and, with notice to Gateway, conducted a public auction of the airplane on August 11, 1970. Gateway's representative attended the auction but made no bid on the airplane. The highest bid of $130,000.00 was refused by defendant. On October 16, 1970, without further notice to Gateway, the defendant sold the airplane at private sale for the sum of $134,000.00. On November 19, 1970, defendant gave Gateway notice by letter that the sale had occurred. It used this letter to make claim against Gateway for the deficiency.

The trial court properly held that Gateway had repudiated the agreements and that the repossession of the airplane was not a tortious conversion. The judgment on the counterclaim for $97,437.00, which included an attorney fee of $12,709.17, was not proper. Plaintiffs urge seven specific points as to why the trial court erred. We will not attempt to answer all of the points individually. We believe that plaintiffs' claim for tortious conversion should be denied for the reason that Gateway had improperly repudiated its agreements with defendant and was thus in default under the terms of the contract.

Gateway was in default of two installments. It filed suit against defendant

alleging breach of warranty and seeking rescission of the agreements. In violation of the agreements it failed to properly maintain, insure and license the airplane, and had moved the airplane away from its home airport. Section 400.9–503 RSMo. provides that "a secured party has on default the right to take possession of the collateral", and defendant did exactly that.

■ A party repudiates a contract by manifesting a positive intention not to perform. *Landau v. St. Louis Public Service Co.,* 364 Mo. 1134, 273 S.W.2d 255, 258 (Mo. banc 1954); *Cork Plumbing Co. v. Martin Bloom Associates,* 573 S.W.2d 947 (Mo.App. 1978); *see* § 400.2–610 RSMo., and comments thereto. This manifestation may be by words or conduct. Gateway's assertion that even if there had been a repudiation it was retracted by its April 30 tender of past due payments, under § 400.2–611 RSMo., has no merit. The evidence considered in its entirety indicates a lack of positive intent to perform the contract according to its terms even at the time of the tender. Defendant had a right to sell the airplane as security of Gateway's obligation to pay defendant upon repudiation by Gateway and cancellation by defendant under § 400.-2–703 RSMo.1969. Since defendant exercised its right pursuant to Gateway's repudiation to rescind the agreements its contractual obligations were at an end and it had no legal duty to reinstate the contract by accepting the past due payments. The collateral thus secured the entire amount payable to defendant under the terms of the contract. Since defendant was entitled to cancel the agreements and insist on full payment there is no merit to Gateway's claim that defendant had repudiated its contractual obligation.

■ While notice was given to Gateway of the public auction which Gateway attended, where the refused high bid for the aircraft was $130,000.00, no prior notice was given of its later private sale for $134,-000.00. This lack of notice was fatal to recovery under the counterclaim.

This transaction was governed by the Uniform Commercial Code and particularly § 400.9–504(3) RSMo. 1969:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ."

We are unable to find a Missouri case exactly on the point at issue. However, many other states, in construing similar language, have held that before a secured party (defendant) can obtain a deficiency against a debtor (Gateway), the debtor must be given notice of what is about to occur. The debtor in this case, Gateway, could have done many things. It could have redeemed the airplane. It could have secured purchasers for the airplane. It was not afforded an opportunity to do anything. *See Mallicoat v. Volunteer Finance & Loan Corp.,* 57 Tenn.App. 106, 415 S.W.2d 347, 350 (1966); *Camden National Bank v. St. Clair,* 309 A.2d 329 (Me.1973). Section 400.-9–501(3)(b) provides that the Uniform Commercial Code's notice provision may not be waived or varied to the extent that it gives *rights to the debtor and imposes duties on the secured party.*

Defendant relies on *Wirth v. Heavey,* 508 S.W.2d 263 (Mo.App.1974). *Wirth* did not involve lack of notice of a private sale. It involved a purchase by a secured party at his own private sale. Accordingly, *Wirth* is distinguishable.

*Anheuser v. Oswald Refractories Co.,* 541 S.W.2d 706, 711 (Mo.App.1976) is a case where our court was confronted with an issue related to resale under § 400.2–706(3) RSMo.1969. That section provides that upon a sale "[w]here the resale is at private

sale the seller must give the buyer reasonable notification of his intention to resell." *Anheuser* held that when a seller avails himself of such remedy, he must comply with all of the terms of that section. Where the seller had not pleaded or proved that he gave the statutory notice, he could not recover the difference between the sale price and the contract price.

For the reason that defendant did not give the required notice to plaintiffs under § 400.9–504(3) we hold that defendant waived its right to any deficiency. Since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficiency accrues only after strict compliance with the relevant statutes.

For these reasons, the judgment on the counterclaim in favor of the defendant is reversed with directions to enter a verdict in favor of plaintiffs. The judgment in favor of defendant on plaintiffs' petition is affirmed.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.