McKESSON CORPORATION,
Plaintiff/Respondent,

v.

COLMAN'S GRANT VILLAGE,
INC., Defendant,

and

Colman H. Kraus and Ronald Gorman,
Defendants/Appellants.

No. 69369.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 11, 1997.

Rexford H. Caruthers, The Holloran Law Firm, St. Louis, for appellants.

Timothy M. Bosslet, Kramer & Frank, P.C., St. Louis, for respondent.

CRANE, Presiding Judge.

Plaintiff McKesson Corporation (McKesson) filed an action for breach of guaranty and replevin against defendants Colman's Grant Village, Inc. (Colman's), debtor, and Colman H. Kraus and Ronald Gorman, guarantors of two promissory notes and of an open account, to obtain a deficiency judgment after sale of collateral securing the promissory notes and to recover the outstanding balance on the open account. The trial court found that McKesson failed to give reasonable notice of the disposition of certain collateral and entered a reduced deficiency judgment in McKesson's favor. Kraus and Gorman appeal. We reverse that part of the judgment awarding McKesson a reduced deficiency judgment in the amount of $345,302.55 because the failure to give notice bars McKesson from recovering a deficiency judgment on the promissory notes. We affirm that part of the judgment awarding McKesson $102,121.19 plus interest in the amount of $9,250.20 on the open account.

McKesson, a Colman's supplier, was assignee of Cass Bank and Trust Company's interest in promissory notes and security agreements executed by Colman's and guaranteed by Kraus and Gorman. Kraus and Gorman also executed an additional guaranty with McKesson to guarantee the full and prompt payment of Colman's present and future obligations to McKesson. As of March 18, 1994, the balance due on the notes was $406,393.36. Interest on that balance was to run from March 18, 1994 at 18% per year.

Colman's purchased goods on account from McKesson between June 21, 1993 and March 15, 1994. As of March 15, 1994, the principal balance due on the open account was $93,096.73.

After demanding payment of the notes and the open account, McKesson filed this action. In Count I McKesson sought to collect the outstanding balance on the promissory notes and open account. In Count II, McKesson sought to replevy the property pledged as collateral under the promissory notes.

Between April 5, 1994 and April 13, 1994, pursuant to an Order of Delivery in Replevin issued by the circuit court on the date the action was filed, McKesson conducted a replevin of the collateral in which it had a perfected security interest, including pharmaceuticals, pharmacy records and customer lists (the pharmacy collateral). McKesson did not give notice of the sale of the pharmacy collateral before the sale. The parties stipulated that the sale of the other collateral was conducted in a commercially reasonable manner.

The contested issue at trial was whether the pharmacy collateral was perishable or threatened to speedily decline in value, thus falling under the exception to the notice requirement of § 400.9–504 RSMo 1994. The trial court found that McKesson was required to notify Kraus and Gorman prior to the sale of the pharmacy collateral and failed to do so. The trial court entered a reduced deficiency judgment on Count I against Kraus and Gorman on their guaranty of the promissory notes for $345,302.55 and on their guaranty of the open account for $102,121.19 with additional interest of $9,250.20. On Count II, the court ordered that the Order of Delivery in Replevin entered March 31, 1994 be made final, entered judgment against defendant Colman's for possession of the property described in the order, and released the replevin bond.

On appeal, Kraus and Gorman assert that McKesson's failure to provide reasonable notice of the sale of the pharmacy portion of the collateral absolutely bars the recovery of any deficiency judgment. We agree that the failure to provide reasonable notice absolutely bars recovery of a deficiency judgment on the promissory notes secured by the collateral. However, we do not agree that the failure to give notice bars a judgment on the balance of the open account.

Section 400.9-504(3) RSMo, "Secured party's right to dispose of collateral after default—effect of disposition" sets forth the notice requirement:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.

A guarantor is a debtor within the meaning of this section and is therefore entitled to notice. *Lendal Leasing v. Farmer's Wayside Stores*, 720 S.W.2d 376, 379 (Mo.App. 1986); *Clune Equipment Leasing Corp. v. Spangler*, 615 S.W.2d 106, 108 (Mo.App. 1981). Notice is required in order to apprise a debtor of the details of a sale so that he may take whatever action necessary to protect himself. *Chrysler Capital Corp. v. Cotlar*, 762 S.W.2d 859, 861 (Mo.App.1989).

Compliance with the notice provision of § 400.9-504(3) is a prerequisite to a recovery of a deficiency after resale of the collateral. *Id.* A secured party's failure to give reasonable notice of the sale of collateral as mandated by this section precludes that party from obtaining a deficiency judgment. *Id.*[1] Strict compliance is required because deficiency judgments after repossession of collateral are in derogation of common law. *Gateway Aviation*, 577 S.W.2d at 863; *Springfield Chrysler–Plymouth v. Harmon*, 858 S.W.2d 240 (Mo.App.1993). In other words, since deficiency judgments were unheard of at common law, the right to a deficiency judgment accrues only after strict compliance with the relevant statute. *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417, 418 (8th Cir.1983).

We have not been directed to any Missouri case where the failure to give reasonable notice applied only to a portion of the collateral. In California, which applies the absolute bar rule, the court of appeals has held that a creditor's failure to give notice or conduct a commercially reasonable sale with respect to thirteen of fifty-two items of the collateral bars a deficiency judgment, stating, "The right to a deficiency judgment is conditional and depends on strict compliance with the statutory requirements." *Crocker National Bank v. Emerald*, 221 Cal.App.3d 852, 270 Cal.Rptr. 699, 704 (3d Dist.1990). In *Crocker* the secured party urged that the debtor had not been damaged because it had credited the debtor with debtor's valuation of the collateral in question and had obtained a deficiency judgment reduced by that amount. The court of appeals rejected this argument in the following language:

Again, we disagree. *Crocker* focuses only on the value of collateral as a measure

---

1. This rule, first expressed in Missouri in *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862–63 (Mo.App.1978), has been adopted and followed by all the districts of the Missouri Court of Appeals. *See e.g.: Eastern District: First Missouri Bank & Trust Co. v. Newman*, 680 S.W.2d 767, 770 (Mo.App.1984); *Modern Auto Co., Inc. v. Bell*, 678 S.W.2d 443, 444 (Mo.App.1984); *Ford Motor Credit Co. v. Freihaut*, 871 S.W.2d 129, 130–31 (Mo.App.1994); *Commerce Bank of St. Louis v. Dooling*, 875 S.W.2d 943, 946 (Mo.App.1994). Western District: *Boatmen's Bank of Nevada v. Dahmer*, 716 S.W.2d 876, 877 (Mo.App.1986); *Sedalia Mer. Bank & Tr. Co. v. Loges Farms*, 740 S.W.2d 188, 195 (Mo.App.1987). Southern District: *Clune*,

615 S.W.2d at 108; *Cherry Manor, Inc. v. American Health Care, Inc.*, 797 S.W.2d 817, 820–21 (Mo.App.1990); *Boatmen's Bank v. Brooks*, 869 S.W.2d 781, 783 (Mo.App.1994); *RWR, Inc. v. DFT Trucking, Inc.*, 899 S.W.2d 875, 878 (Mo. App.1995).

It has also been applied by federal courts applying Missouri law. *See Executive Financial Services Inc. v. Garrison*, 722 F.2d 417, 418 (8th Cir.1983); *Chemical Sales Co., Inc. v. Diamond Chemical Co.*, 766 F.2d 364, 369 (8th Cir.1985); *U.S. v. Friesz*, 690 F.Supp. 843, 845 (E.D.Mo. 1988). Other states follow this rule. *See* 9 Anderson on the Uniform Commercial Code § 9–504.96 & Cum.Supp.1992.

of Emerald's damages, and ignores the greater damage: allowing the creditor who has not complied with the requirements of § 9504 to collect a deficiency judgment. If the secured creditor fails to meet the requirement of a commercially reasonable sale, it cannot collect a deficiency judgment of the balance owed by the creditor. (*Buran Equipment Co. v. H & C Investment Co.* (1983) 142 Cal.App.3d 338, 341, 190 Cal.Rptr. 878. This deficiency judgment is precisely what Crocker seeks to collect.

*Id.*

The trial court did not apply the absolute bar rule. Instead, the trial court awarded the amount the parties stipulated was the net deficiency, $394,493.15, less the amount of net proceeds for the sale of the pharmacy, $49,190.60, (which amount had already been deducted to compute the net deficiency) and entered a reduced deficiency judgment in the amount of $345,302.55.

McKesson argues that the trial court's order was a "set-off of damages against the deficiency balance on the notes" under the damage provision of § 400.9–507(1). McKesson asserts that Kraus and Gorman failed to prove a specific dollar amount of damages so the trial court fixed the amount of damages as the net sale proceeds of the pharmacy. McKesson contends that the rule barring collection of deficiency judgments in the absence of reasonable notice is not codified in the U.C.C. and the only codified remedy is the damage remedy found in section 400.9–507(1), entitled "Secured party's liability for failure to comply with this part" which provides:

(1) . . . If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. . . .

McKesson states that the "set-off remedy provided by § 400.9–507" was recognized in *Commercial Credit Equipment Corp. v. Parsons,* 820 S.W.2d 315 (Mo.App.1991). In *Commercial Credit,* the Western District of this court found the sale of collateral commercially reasonable and affirmed a deficiency judgment. It then reversed a $10,000.00 judgment in favor of the debtor awarded as damages for commercial unreasonability. By way of *dicta* the opinion identified three remedies available to a debtor where secured property has been disposed of in a commercially unreasonable manner: an absolute bar against a deficiency judgment, the rule of rebuttable presumption, and the rule of set-off under § 400.9–507. *Id.* at 324. It criticized the absolute bar rule and advocated the rebuttable presumption rule, which appears in an Arkansas case quoted in *Wirth v. Heavey,* 508 S.W.2d 263, 268 (Mo.App.1974). *Id.* at 324.[2] In its discussion *Commercial Credit* criticized the set-off rule because it placed the burden of proving damages on the debtor:

The set-off rule allows a misbehaving creditor to collect a deficiency judgment, subject however to whatever damages are awarded to the debtor under section 400.9–507(1). The impediment of this rule is that the burden to prove damages rests on the debtor. *See* 9 R. Anderson, *Anderson on the Uniform Commercial Code* Sec. 9–507:8 (3d ed.1985). It has no currency in our decisions. That is the rule that the trial court mistakenly applied.

*Id.* at 324. Accordingly, *Commercial Credit* is not authority for application of a set-off rule to award a reduced deficiency judgment.

In *Camden National Bank v. St. Clair,* 309 A.2d 329 (Me.1973), cited by *Gateway Aviation,* the Maine Supreme Court analyzed in detail whether that state's absolute bar rule survived the enactment of the U.C.C. in Maine. In *Camden,* as here, the secured party argued that after adoption of the U.C.C. the debtor's sole remedy for noncompliance with U.C.C. § 9–504(3) was U.C.C. § 9–507(1). The court disagreed and

---

2. The rebuttable presumption rule has been applied in Missouri only in *Wirth,* a 1974 case predating *Gateway Aviation.* In adopting the absolute bar rule, *Gateway Aviation* refused to follow *Wirth* on the grounds that it did not involve lack of notice of a private sale, but purchase by a secured party at his own private sale. *Gateway Aviation,* 577 S.W.2d at 862.

held that the rule that compliance with notification requirements as to disposition of collateral was a condition precedent to a secured creditor's right to recover a deficiency was consistent with the U.C.C. *Camden,* 309 A.2d at 332. It held that the cause of action established by U.C.C. § 9–507(1) is not an exclusive remedy for the secured creditor's failure to meet the notification requirements for three reasons:

First, the language in § 9–507(1) itself speaks only of the existence of a cause of action in favor of the debtor and omits any express statement reasonably suggestive of an intention that such cause of action shall be the exclusive remedy available to the debtor.

\* \* \*

Second, in view of the omission of § 9–507(1) expressly to state that it provides an exclusive remedy for notification deficiencies, U.C.C. § 1–103 becomes most significant. Its import is that the right of action established by § 9–507(1), absent clear expression to the contrary, must be held cumulative in the context of remedies previously, or otherwise, afforded.

\* \* \*

[Third], [a]n after-the-fact cause of action for damages clearly is of no benefit to a debtor who, because of a secured creditor's disposition of the collateral without proper compliance with statutory requirements for notification, may have lost his right to reacquire the collateral in specie [under U.C.C. § 9–506].

*Id.* at 332–33.

Missouri courts have consistently applied the absolute bar rule since 1978. Under this rule McKesson is barred from recovering a deficiency judgment on the notes. The judgment of the trial court awarding McKesson $345,304.55 against Kraus and Gorman as guarantors on the notes must be reversed.

Kraus and Gorman further argue that McKesson is not only barred from recovering a deficiency judgment on their guaranties for the notes, but also barred from collecting a judgment on their guaranties of the open account. They assert McKesson's failure to give notice bars *any* deficiency judgment. We disagree.

The only authorities Kraus and Gorman cite in support of their argument that McKesson waived its right to recover a deficiency on both the note and the open account debt are *Chrysler Credit,* 762 S.W.2d at 861 and *Gateway Aviation,* 577 S.W.2d at 863. However, these cases do not address the specific situation where the note and account obligations are separate.

Nothing in the record indicates that the collateral securing the promissory notes also secured the open account. The failure to give notice of the sale of the collateral does not affect the debtor's liability on a debt distinct from that in connection with which the collateral was sold. 9 Anderson on the Uniform Commercial Code § 9–504.63 at 761; *see also Hallmark Cards, Inc. v. Peevy,* 293 Ark. 594, 739 S.W.2d 691, 694 (1987). Because the open account debt was not secured by collateral, failure to give notice of the sale of the pharmacy collateral did not preclude a deficiency judgment on the open account debt. The judgment awarding McKesson $102,121.19 on the open account debt is not subject to the bar on deficiency judgments.

That portion of the trial court's judgment awarding McKesson $345,302.55 as a deficiency judgment on the promissory notes is reversed. In all other respects the judgment is affirmed.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.