CHRYSLER CAPITAL CORPORATION, f/d/b/a E.F. Hutton Credit Corporation, Plaintiff–Appellant,

v.

Marvin L. COTLAR and Madonna O. Cotlar, Defendants–Respondents.

No. 53792.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 10, 1989.

Chused, Bini, Kohn, & Feldmann, P.C., Robert N. Feldmann and Eric W. Butts, St. Louis, for plaintiff-appellant.

Newman, Goldfarb, Freyman & Stevens, P.C., David B. Freyman and Richard J. Scheffler, Clayton, for defendants-respondents.

KAROHL, Judge.

Plaintiff, Chrysler Capital Corporation, formerly E.F. Hutton Credit Corporation, [Chrysler Credit], appeals from a judgment notwithstanding the verdict favoring defendants, Marvin L. Cotlar and Madonna O. Cotlar. The court entered the judgment after finding, as a matter of law, that plaintiff's sale of secured collateral pursuant to § 400.9–504(3) RSMo 1986 occurred prior to receipt of notice of sale of collateral sent by Chrysler Credit to the Cotlars. In all other respects the Cotlars' motion for amendment of judgment, post-trial relief, motion for new trial, and motion for judgment notwithstanding the verdict were denied.

Plaintiff Chrysler Credit appeals claiming the court's determination that collateral was sold before notice required by provisions of the Uniform Commercial Code, § 400.9–504(3) RSMo 1986, was erroneous as a matter of fact and law. It claims notice was received on October 27, 1984 and the sale did not occur until October 30, 1984 and, therefore, the sale was commercially reasonable. The Cotlars cross-appeal claiming the trial court erred in rejecting other grounds supporting the result reached because: (1) the "notice" that was given was not reasonable and failure to give reasonable notice precludes plaintiff

from obtaining a deficiency judgment against defendants as guarantors on the authority of § 400.9–504(3) RSMo 1986; (2) plaintiff improperly attempted to notify Cotlars of the sale by sending notice to the wrong street, wrong city and wrong zip code and thus the attempt failed to qualify as notice "sent"; and, (3) the court erred in not taking judicial notice of Federal Rule 11 which may have supported admission of prior pleadings of plaintiff Chrysler Credit in a bankruptcy proceeding fixing the value of the collateral sold at $105,000—$125,000, where the collateral was sold at a private sale for only $33,000.

The facts of this case are not in dispute. The Hanley Partnership, Inc., entered into a lease agreement with E.F. Hutton Credit Corporation, predecessor in interest of Chrysler Credit. On April 27, 1982 the Cotlars signed a personal guarantee for a Promissory Note and Security Agreement issued by the Hanley Partnership, Inc. The principal amount of the Promissory Note was $201,392.14, and the Cotlars granted E.F. Hutton Credit Corporation a security interest in a computer system as collateral. Payments were made by the Hanley Partnership Inc. from June 20, 1982 through 1983, but the payments thereafter ceased. An involuntary petition in bankruptcy was filed against the Hanley Partnership Inc. on February 6, 1984. On June 21, 1984, E.F. Hutton Credit Corporation sued Marvin and Madonna Cotlar on their personal guarantees.

On October 4, 1984 E.F. Hutton sent "notice" by a certified letter to the Cotlars of a private sale of the collateral. The letter stated that due to the default of the Hanley Partnership, Inc., the computer system offered as collateral would be disposed of by a private sale to be held on or after 10:00 a.m. on October 15, 1984. This notice of sale was improperly addressed and the Cotlars did not receive the notice until October 27, 1984. The street name was spelled incorrectly, the wrong city listed, and an improper zip code was used.

After sending the notice of sale E.F. Hutton negotiated for a sale of the collat-

eral. It discussed selling the computer system with Automated Information, Inc. On October 18, 1984, it sent the following letter to Automated Information, Inc.

Confirming our telephone conversation of Wednesday, October 17, 1984 please be advised of the following.

EFHCC accepts your cash offer of $33,-000.00 for the purchase of the DEC VAX 11/750 now located at 6710 Clayton Road, St. Louis. The system is more fully described on the attached schedule. This sale is on an AS–IS, WHERE–IS, basis with no warranties. A certified check is to be received by EFHCC for full purchase price within (10) days of the date of this letter. A Bill of Sale will be issued to ALL upon receipt of certified funds.

Thank you for your consideration in this matter. If you should have any further questions, please feel free to call.

On October 30, 1984, E.F. Hutton received payment of $33,000 for the computer system from Automated Information, Inc. Title and bill of sale were delivered on that date.

At trial, Cotlars argued that the letter of October 18, 1984, to Automated Information, Inc. constituted a sale of the computer system. Therefore, since they did not receive notice of sale until October 27, 1984, Cotlars claimed they did not receive proper notice of the sale in accordance with § 400.9–504 RSMo 1986. Chrysler Credit claimed that no sale of goods occurred until October 30, 1984, the date of payment and transfer of title, and therefore the notice received by the Cotlars on October 27, 1984, was sufficient.

The jury found in favor of Chrysler Credit. Cotlars filed motion for amendment of judgment, post-trial relief, motion for new trial, and motion for judgment notwithstanding the verdict. The trial court granted judgment notwithstanding the verdict, finding that the sale of the computer system occurred on or prior to October 27, 1984, and therefore debtors did not receive proper notice of the sale under § 400.9–504(3) RSMo 1986.

■ Chrysler Credit's first issue is whether the trial court erred in finding the sale of collateral occurred prior to receipt of notice of the sale by debtors on October 27, 1984. We find the sale of the computer system did not occur until transfer of title on October 30, 1984, but that notice of sale was defective because debtors did not receive reasonable notice of the time after which the collateral could be sold as is required by § 400.9–504(3) RSMo 1986. The judgment of the trial court was legally correct but for the wrong reasons. We affirm. *See, Arthur v. Jablonow,* 665 S.W.2d 364, 365 (Mo.App.1984).

■ A secured party must give reasonable notice of a sale of goods to preserve a right to a judgment for any deficiency.

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of *the time after which any private sale or other intended disposition is to be made* shall be sent by the secured party to the debtor.... (Our emphasis).

Section 400.9–504(3) RSMo 1986. Chrysler Credit failed to give Cotlars reasonable notification *of the time after which* a private sale was to be made and therefore is not entitled to a deficiency judgment against debtors. The receipt of a letter on October 27, 1984, cannot be notice of a future event to occur on October 15, 1984.

■ The right to a deficiency judgment accrues only when there is strict compliance with statutory requirements. *First Missouri Bank & Trust Co. of Creve Coeur v. Newman,* 680 S.W.2d 767, 770 (Mo. App.1984); *Gateway Aviation, Inc. v. Cessna Aircraft Co.,* 577 S.W.2d 860, 863 (Mo.App.1978). Any doubt as to whether there has been compliance with § 400.9–504 is to be resolved in favor of the debtor. *Boatmen's Bank of Nevada v. Dahmer,* 716 S.W.2d 876, 877 (Mo.App. 1986). If a creditor fails to give proper notice, the creditor waives entitlement to pursue a deficiency judgment. *Id.* at 877.

In this case, the evidence indicated that the collateral was sold by private sale. Therefore, in the notice sent to Cotlars as guarantors, Chrysler Credit was required to notice the date after which the collateral would be sold. Section 400.9–504(3) RSMo 1986; *First Missouri Bank & Trust Co. of Creve Coeur,* 680 S.W.2d at 769. The statute required Chrysler Credit (then E.F. Hutton) to give debtors reasonable notice of this date. The Cotlars did not receive notice that the collateral would be sold after October 15, 1984, until twelve days later, on October 27, 1984, and therefore the notice of sale was defective.

Courts impose a burden of strict and literal compliance with § 400.9–504(3) RSMo 1986. *Boatmen's Bank of Nevada,* 716 S.W.2d at 878. The language of § 400.9–504(3) RSMo 1986 requires reasonable notice *of the date after which collateral will be sold,* not notice of the date of sale. Cotlars did not receive notice until the date after which collateral would be sold had already passed. Therefore, they did not receive proper statutory notice. The fact they received the notice prior to the actual sale of the collateral does not remedy the statutory deficiency. Under § 400.9–504(3) RSMo 1986 the Cotlars were entitled to reasonable notice from creditor prior to October 15, 1984. They received no notice until October 27, 1984; therefore, statutory requirements were not met.

The purpose of statutory notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest. *Modern Auto Co., Inc. v. Bell,* 678 S.W.2d 443, 445 (Mo.App.1984). Here, the Cotlars were unaware the creditor planned to sell the collateral on or after October 15, 1984, until October 27, 1984. Therefore, debtors were not granted the opportunity protected by statute to take necessary steps to protect their interest. As far as the Cotlars knew, the collateral might have already been sold before they received the notice

on October 27, 1984. Since the letter stated the collateral would be sold on or after October 15, debtors could have reasonably assumed that when they received the notice it was "too late" to take steps to protect their interests. The collateral could have been sold anytime between October 15, 1984, and October 27, 1984. In addition, notice received before October 15, 1984, would have allowed at least 15 days to make arrangements for a "maximum price" sale because, in Chrysler Credit's view, it did not sell until October 30, 1984.

Receiving the notice twelve days after October 15 did not give the Cotlars statutory reasonable notice of the time after which a private sale could be held. In fact, it gave them no notice because they were unaware the collateral would be sold on or after October 15, 1984, until receipt of a letter on October 27, 1984. For the absence of statutory notice, Chrysler Credit is not entitled to a deficiency judgment against the Cotlars as guarantors. The trial court properly granted judgment notwithstanding the verdict although for a different reason. It was the absence of proper notice, not the date sale actually occurred that is decisive. We affirm a judgment notwithstanding the verdict if the ruling was proper for any reason, even if the grounds assigned were wrong. *Arthur v. Jablonow*, 665 S.W.2d 364, 365 (Mo.App.1984).

Although the trial court was correct in granting the judgment notwithstanding the verdict, the court erred in finding that the sale of collateral occurred on or prior to October 27, 1984. The court found that the letter E.F. Hutton sent to Automated Information, Inc. on October 18, 1984, constituted a sale of the collateral. The letter, however, did not constitute a sale of goods because there was no transfer of title of the collateral occurred until October 30, 1984. The Uniform Commercial Code, adopted by Missouri, states that a sale consists in the passing of title from seller to buyer. Section 400.2–106(1) RSMo 1986. Since there was no transfer of title of the collateral until October 30, 1984, the trial court erred in finding that the sale occurred on or prior to October 30, 1984.

We affirm the judgment of the trial court in favor of Cotlars because notice of private sale of collateral was not given by plaintiff Chrysler Credit. The remaining points raised by both parties on appeal need not be addressed.

We affirm.

GRIMM, P.J., and GARY M. GAERTNER, JJ., concur.