**STATES RESOURCES CORP.,**
**Respondent,**

v.

**Jeff GREGORY, Appellant.**

**No. SD 30828.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 12, 2011.

Donald M. Brown, Bolivar, MO, for Appellant.

Thomas J. Fritzlen, Jr. and William H. Meyer, Kansas City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Jeff Gregory ("Appellant") appeals the trial court's grant of summary judgment in favor of States Resources Corp. ("Respondent") for the deficiency amount on a promissory note. Because Respondent failed to establish it met the statutory notice requirements for a deficiency judgment, we reverse and remand this matter to the trial court.

### Factual and Procedural History

On November 15, 2006, Appellant executed, for the purchase of a 2001 Ford F–250 truck (the "truck"), a consumer promissory note (the "Note") in the principal amount of $19,669.51, plus interest, and delivered it to Hume Bank. Repayment of the Note was secured by a security interest in the truck and a 1998 Chevrolet Lumina. The Federal Deposit Insurance Corporation ("FDIC") was subsequently appointed receiver of Hume Bank and in that capacity, became the owner and holder of the Note. FDIC then assigned the Note to Respondent. Appellant failed to make the required payments and defaulted on payment of the Note.

On September 24, 2008, Respondent sent Appellant a **"FRIGHT TO CURE"** letter (the "September 24 Letter"), **"VIA CERTIFIED & REGULAR MAIL,"** that notified Appellant he was in default under the terms of the Note and permitted him twenty-one days to cure the default. The letter advised Appellant:

Allow this letter to serve as formal notice that your account is in default! You now have twenty-one (21) days to bring your account current.

The amount needed to cure this default is *$4,606.50.* You must remit this amount either by cashier's check, money order, or Western Union Quick Collect within the next twenty-one (21) days.

Please be advised that if the amount due is not paid within the next twenty-one (21) days. [sic] I will be left with no other alternative but to proceed with all remedies available to collect the total amount due on your account.

If you voluntarily surrender possession of the vehicle, you could still owe additional money, money received from the sale of the collateral is deducted from the total amount you owe.

I can be reached at either number below. If I am unavailable[,] please leave me a voice message and I will return your call as soon as possible.

Your prompt attention to resolving this default is appreciated.

Notice of the September 24 Letter was delivered to Appellant's address on September 26, 2008, and again on October 1, 2008. However, Appellant failed to claim the September 24 Letter and it was returned to Respondent on October 11, 2008. Respondent conceded in its brief "it was premature to discuss the truck's disposition as of the date the September 24 Letter was sent."

Respondent repossessed the truck on October 19, 2008. On October 20, 2008, Respondent sent Appellant a second letter (the "October 20 Letter") by *"CERTIFIED MAIL RETURN RECEIPT REQUESTED"* and advised him the truck had been repossessed and the time period Appellant had to redeem the truck. This letter explained:

Please be advised that the 2001 Ford F-250 truck, VIN No.: 1FTNX21L01EC71912 has been repossessed by States Resources Corp.

You have ten (10) days to bring this account current and pay the repossession fees to redeem the vehicle. After the ten days or after October 30, 2008 the vehicle will be sold at public auction. The proceeds from the sale will be applied to your loan.

If you would like to redeem the vehicle, please call me at 800–279–8295, extension 108 for the amount needed to redeem the vehicle.

The October 20 Letter was delivered to Appellant, and Appellant signed the certified receipt acknowledging receipt of that letter.

Sometime after October 20, 2008, the truck was sold by Manheim Auction ("Manheim")[1] at a "private 'dealer-only' [auction]." The sale of the truck brought a net sale price of $6,890.00. Appellant applied the net proceeds from the truck's sale to Appellant's debt. As of November 9, 2009, the principal amount remaining due on the Note was $10,259.37, together with accrued interest in the amount of $2,482.41 and late charges in the amount of $332.00, or a total owed by Appellant of $13,073.78. Interest accrued on the Note, after that date, in the amount of $2.59998 per day.

On January 4, 2010, Respondent filed its "Petition for Deficiency on Promissory Note" against Appellant. Appellant filed his answer on February 9, 2010. On April 16, 2010, Respondent filed its "Motion for Summary Judgment," along with its suggestions, statement of uncontroverted facts, and supporting exhibits. Respondent argued, in part:

There are no genuine issues of material fact. [Appellant] defaulted on the Note, and pursuant to the term of the Note

1. December 4, 2008, is the date on the sale invoice from Manheim Auction.

and after notice of the right to redeem, the collateral securing payment of the Note was sold at a commercially reasonable sale and the proceeds were applied to the balance due under the Note. [Respondent] is entitled to the deficiency still due and owing on the Note along with its costs in collection including reasonable attorney fees, all as a matter of law.

Respondent's statement of uncontroverted material facts included the following: "On or about October 19, 2008, [Respondent] repossessed the [truck] from [Appellant], and on October 20, 2008, [Respondent] notified [Appellant] of his right to redeem the [truck], and of its intent to dispose of the [truck] at a public auction." In support, Respondent attached a copy of the October 20 Letter. Respondent's statement of uncontroverted facts also recited: "Thereafter, at a commercially reasonable sale, the [truck] was sold and the proceeds applied to the balance due under the Note." Respondent referenced as support the affidavit of Cory Butler ("Butler"), "account manager" for Respondent, and "a true and correct copy of the Manheim Auction Sale Invoice." Butler's affidavit stated in relevant part: "Thereafter, at a commercially reasonable sale, the [truck] was sold and the proceeds applied to the balance due under the Note." Respondent admits it "erroneously argued in its Motion for Summary Judgment that the truck had been sold at a 'public' auction."

Appellant filed his response to the Motion for Summary Judgment on May 25, 2010. Appellant admitted in part many of Respondent's facts. Specifically, he admitted "payments have not been made on the [truck] in question." Appellant objected throughout his response "to the use of any unauthenticated documents for purposes of sustaining [Respondent']s motion for summary judgment." Appellant denied "the [truck] was sold in a commercially reason-

able manner," and specifically objected to the admissibility of Butler's affidavit as to the commercial reasonableness of the sale of the truck "as such testimony amounts to nothing more than a legal conclusion unsupported by underlying facts" and "is void of any foundation or statements of qualification of [Butler] to act as an expert for the purpose of testifying to the standard of a 'commercially reasonable' sale of the [truck] in question. . . ." Appellant also argued Respondent "failed to authenticate the auction sale invoice."

Appellant attached his affidavit stating he did not "recall" receiving the September 24 Letter or the October 20 Letter. He also stated:

I do not believe that the repossession and sale of the [truck] in question was handled in a commercially reasonable manner. Although I cannot speak to the legal definition of 'commercially reasonable,' I do not believe that I received all required notices and I do not believe that the [truck] in question was sold for its value.

On August 12, 2010, the trial court concluded Appellant failed "to controvert [Respondent]'s allegations or create a dispute as to material facts" and considered Respondent's statement of uncontroverted material facts "as either admitted or proven and not in dispute." Summary judgment was entered against Appellant and in favor of Respondent. This appeal followed.

Appellant alleges the trial court erred in granting Respondent's summary judgment because: (1) Respondent failed to prove as a matter of law it complied with statutorily mandated notice requirements for disposition of collateral; (2) Respondent's petition failed to plead facts or provide supporting documents showing Respondent met the statutory preconditions of a commercially

reasonable sale; and (3) the affidavit and documents attached to Respondent's Motion for Summary Judgment were not authenticated as required by Missouri evidentiary standards. Respondent contends the trial court's grant of summary judgment was proper. Appellant's first point is dispositive; thus, the only issue we need determine is whether Respondent established it met the statutory notice requirements for a deficiency judgment as a matter of law.

## Standard of Review

We review a grant of summary judgment on a *de novo* basis and view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); *American Std. Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000). Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 380. The movant has the burden to demonstrate both elements. *Cochran v. Travelers Ins. Co.*, 284 S.W.3d 666, 669 (Mo.App. S.D.2009). "The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question." *Zerebco v. Lolli Bros. Livestock Market*, 918 S.W.2d 931, 934 (Mo.App. W.D.1996). Summary judgment is an extreme and drastic remedy and we exercise great caution in affirming it because the procedure cuts off the opposing

party's day in court. *ITT Commercial Fin.*, 854 S.W.2d at 377.

### Failure to Prove Compliance with Notice Requirement

■ Appellant claims the notice sent to him did not comply with section 400.9–614 [2] and, therefore, precludes a deficiency judgment against him. Respondent submits its notice substantially complied with the notice requirements and thus, is entitled to summary judgment as a matter of law. The determinative issue is whether Respondent established it met the statutory notice requirements for a deficiency judgment as a matter of law.[3]

Section 400.9–611(b) requires a secured party to provide the debtor with reasonable notice of its intent to sell the collateral. The content and form of the notice required for consumer transactions are dictated by section 400.9–614. Subsection (1) of that statute sets out what must be included in the notice:

(1) A notification of disposition must provide the following information:

(A) The information specified in section 400.9–613(1);

(B) A description of any liability for a deficiency of the person to which the notification is sent;

(C) A telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9–623 is available; and

(D) A telephone number or mailing address from which additional information

2. Statutory citations are to the Missouri Uniform Commercial Code ("UCC"), RSMo chapter 400, as amended through 2006.

3. Appellant's first point assumes, *arguendo*, the affidavit and attached documents were competent evidence. For purposes of analyzing this point, we also presume the documents are competent evidence. However, because we find Respondent failed to meet the statutory notice requirement, even if the documents were deemed competent, we do not and need not reach an ultimate conclusion regarding the competency of these documents; this opinion should not be read to support the admissibility of such evidence on the basis of the record before us.

concerning the disposition and the obligation secured is available[.]

§ 400.9–614(1). Section 400.9–614(1)(A), with reference to section 400.9–613(1), requires the notification also:

(A) Describe[ ] the debtor and the secured party;

(B) Describe[ ] the collateral that is the subject of the intended disposition;

(C) State[ ] the method of intended disposition;

(D) State[ ] that the debtor is entitled to an accounting of the unpaid indebtedness and state[ ] the charge, if any, for an accounting; and

(E) State[ ] the time and place of a public disposition or the time after which any other disposition is to be made[.]

The statute does not require a "particular phrasing" of the notification. § 400.9–614(2).

■■■ "The purpose of statutory notice is to apprise a debtor of the details of a sale so that the debtor may take whatever action he deems necessary to protect his interest." *Chrysler Capital Corp. v. Cotlar*, 762 S.W.2d 859, 861 (Mo.App. E.D. 1989).[4] Proper notice provides the debtor the opportunity to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify that the sale is conducted in a commercially reasonable manner. *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 95 (Mo.App. W.D.2008).

■■■ "The right to a deficiency judgment accrues only when there is strict compliance with statutory requirements." *Chrysler Capital Corp.*, 762 S.W.2d at 861. Any doubt as to whether there has been compliance is to be resolved in favor of the debtor. *Mancuso*, 254 S.W.3d at 92. A creditor's failure to give proper notice, waives the creditor's entitlement to pursue a deficiency judgment. *Chrysler Capital Corp.*, 762 S.W.2d at 861.

Here, the September 24 Letter and October 20 Letter are the only evidence of notification to Appellant of disposition of the truck. As such, we first determine whether the September 24 Letter constitutes a notification or part of Respondent's notification of disposition.

Section 400.9–611(b) requires a secured party that disposes of collateral to send a "reasonable authenticated notification of *disposition*" (Emphasis added). Here, Respondent is essentially arguing that because the September 24 Letter contained some of the information also required under section 400.9–614, it was in fact part of their notification of disposition to Appellant. We decline to apply Respondent's reasoning. A letter that does not inform the debtor of the creditor's intent to sell the collateral—even if it contains some of the information required in a notification of disposition—cannot provide reasonable notification of disposition.

The September 24 Letter did not inform Appellant of Respondent's intent to sell his truck. In fact, Respondent admits in its brief this was because, at that point, it was premature to discuss the truck's disposition:

[A]t the time the September 24 Letter was sent, Appellant's truck was still in [Appellant's] possession and had not been repossessed. It [was] clear from [the] September 24 Letter that Respondent was still hoping that Appellant would voluntarily pay his debt or at

---

4. In July 2001, a comprehensive revision of Article 9 of the UCC went into effect. Prior to that, the reasonable notice requirement was located in section 9–540(3). *Chrysler Capital Corp.*, was decided under the earlier version of Article 9. *See Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 94 n. 5 (Mo. App. W.D.2008).

least surrender the truck ... *it was premature to discuss the truck's disposition as of the date the September 24 Letter was sent.*

(Emphasis added). Thus, it would have been impossible to provide reasonable notification of disposition when there was in fact no impending disposition of the truck of which to inform Appellant. In addition to Appellant's admission that this letter was not sent to discuss the disposition of the truck, the content of the letter also does not inform Appellant his truck will be sold.[5] The only reference to a possible sale of the truck is noted in the limited case of Appellant's voluntary surrender of the truck.

Adhering to Respondent's reasoning would permit almost any correspondence to be considered part of the requisite notification of disposition if it happened to contain some of the information required by section 400.9–614. For obvious reasons, this would defeat the purpose of the statutory notice requirement of apprising a debtor of the details of a sale so that the debtor could take whatever action he deemed necessary to protect his interest and would create significant uncertainty as to what actually constituted proper notice.

■ Thus, the September 24 Letter should not be considered part of Respondent's notification of disposition. Accordingly, we look to the October 20 Letter to determine whether it establishes Respondent fulfilled the statutory notice requirements as a matter of law.

■ First, we note Respondent is misguided in arguing substantial compliance with the notice requirements entitled Respondent to a deficiency judgment. In support of this argument, Respondent erroneously cites to section 400.9–613(2)–(3),[6] which sets forth a more relaxed notification provision that is applicable "[e]xcept in consumer-goods transactions." Section 400.9–614 provides the rules for consumer-goods transactions, such as this transaction,[7] and by reference only incorporates the requirements contained in section 400.9–613(1). Contrary to Respondent's contention, in consumer-goods transactions, strict compliance is required. *Chrysler Capital Corp.*, 762 S.W.2d at 861. While we acknowledge the statute does not require a "particular phrasing of the notification," a notification that lacks any of the information set forth in section 400.9–614(1) is insufficient as a matter of law.[8] Uniform Commercial Code Comment 2 to section 400.9–614.

---

5. The September 24 Letter begins: "Allow this letter to serve as formal notice that your account is in default!"

6. Section 400.9–613 provides, in part:
   (2) Whether the contents of a notification that lacks any of the information specified in paragraph (1) are nevertheless sufficient is a question of fact;
   (3) The contents of a notification providing substantially the information specified in paragraph (1) are sufficient, even if the notification includes:
   (A) Information not specified by that paragraph; or
   (B) Minor errors that are not seriously misleading[.]

7. There is no dispute this is a consumer-goods transaction; the Note was specifically designated a "CONSUMER PROMISSORY NOTE...." Appellant admitted this fact in his brief, and Respondent also admitted this fact during oral arguments.

8. Although this strict compliance requirement can result in harsh consequences for creditors who fail to provide proper notification, the legislature provided clear requirements for consumer-goods transactions to ensure consumer protection, and the statute provides clear instructions and a "Safe–Harbor Form of Notification" to assist creditors in complying with the notification requirement.

The October 20 Letter failed to meet the statutory notification requirements in the following respects: (1) it did not state Appellant is entitled to an accounting of the unpaid indebtedness; (2) it failed to provide a description of any liability for a deficiency; and (3) it incorrectly stated the nature of the sale.

An "accounting" is a record that: (1) is authenticated by the secured party, (2) indicates the aggregate unpaid secured obligations within thirty-five days of the record, and (3) identifies the components of the obligations in reasonable detail. § 400.9–102(a)(4)(A)–(C). Here, the October 20 Letter neither provided Appellant with an accounting, nor did it inform Appellant he was entitled to an accounting as required by section 400.9–613(1)(D).

Furthermore, the October 20 Letter failed to provide a "description of any liability for a deficiency" as required by section 400.9–614(1)(B). The letter merely states, "The proceeds from the sale will be applied to your loan."

Finally, the October 20 Letter stated the truck would be sold at "public auction" without including the time and place of a public disposition as required for a public disposition by section 400.9–614(1)(E) with reference to section 400.9–613(1)(A). We additionally note this information was incorrect as it was actually sold at a "private dealer-only auction."[9] Any doubt as to whether there has been compliance is to be resolved in favor of the debtor. *Mancuso,* 254 S.W.3d at 92.

Respondent has not proven strict compliance with these notice provisions and, therefore, is not entitled to a deficiency judgment as a matter of law based upon the record before us. *See Chrysler Capi-*

tal Corp., 762 S.W.2d at 861. Point I is granted. We reverse and remand to the trial court for further proceedings not inconsistent with this opinion.

RAHMEYER, P.J., and BATES, J., concur.

---

9. In fact, it is still unclear from the record whether Appellant knew the truck was sold at a private auction as Appellant's argument in his brief indicated he still believed the truck had been sold at a public auction. There is no evidence that Respondent corrected this error until the filing of Respondent's brief.