**In re James N. KOERKENMEIER and Mary Jane Koerkenmeier.**

**Jack E. BROWN, Trustee, Plaintiff,**

v.

**FARMERS HOME ADMINISTRATION, Defendant.**

Bankruptcy No. 87–03431–C–7.

Adv. Action No. 89–2020–C–7.

United States Bankruptcy Court, W.D. Missouri, C.D.

Nov. 15, 1989.

Jerry W. Venters, Jefferson City, Mo., for plaintiff.

Vernon A. Poschel, Asst. U.S. Atty., Kansas City, Mo., for defendant.

James F. Crews, Tipton, Mo., for debtors.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

The adversary action before the Court is the Complaint for Turnover filed by the Trustee against the Farmers Home Administration ("FmHA") and FmHA's Counterclaim asserted against the Trustee and its cross-claim asserted against Debtors.[1] Debtors did not respond to the cross-claim filed by FmHA. Upon due notice, the Trustee and FmHA, and their respective

---

1. Although Debtors are neither plaintiffs nor defendants in the above-adversary action, FmHA asserted a cross-claim against Debtors, apparently based upon Federal Bankruptcy Rule 7013 and Federal Rule of Civil Procedure 13. Subsequently, FmHA subsequently moved

counsel, appeared before the Court on July 26, 1989; neither Debtors nor their counsel appeared. A Stipulation of Facts and legal memorandum in the form of correspondence to the Court were submitted by counsel for the Trustee and FmHA. The following shall be considered the Court's findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052. The Court has jurisdiction over this matter and may enter final orders pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E) and 11 U.S.C. § 542.

The facts before the Court are essentially uncontested, as evidenced by the Stipulation of Facts. Debtors filed their Chapter 7 petition on August 7, 1987. FmHA is a creditor of Debtors, as evidenced by two promissory notes dated February 2, 1979 and February 20, 1981, executed by Debtors in favor FmHA. Debtors also executed two deeds of trust in favor of FmHA in order to secure the above-described indebtedness, which FmHA duly recorded with the Office of the Recorder for Moniteau County, Missouri. Included in the deeds of trust are assignments of rents, which purport to grant FmHA an interest in rents and profits of Debtor. Also included in the deeds of trust are provisions that require the prior written consent of FmHA to the lease or assignment of the property covered by the deeds of trust.

In 1987, prior to the filing of their bankruptcy petition, Debtors began participation in the Conservation Reserve Program ("CRP"), a federal farm program administered by the Agricultural Stabilization and Conservation Service ("ASCS"). On or about February 26, 1987, Debtors executed a CRP contract which provided for the inclusion of 122.8 acres of their farm land in the CRP, generating the annual payment of $7,977.00 from ASCS to Debtors. On July 1, 1987, ASCS accepted Debtors into the CRP. Under the CRP program, Debtors were to receive payment in October of each year that they participate in the program. There was no evidence introduced that FmHA, as required by their own deeds of trust, provided prior written consent to the inclusion of Debtor's property in the CRP.

On May 3, 1988, almost nine months after the filing of their petition, Debtors received their 1987 CRP payment. From this amount, $2,100.00 was received by FmHA, $5665.88 was apparently used by Debtors for expenses incurred as the result of compliance with CRP guidelines, and $211.12 was retained by Debtors. The first payment due Debtors in October 1987 was delayed until May 1988 because Debtors apparently failed to comply with CRP requirements prior to that time. On October 10, 1988, Debtors received their 1988 CRP payment; these funds have been turned over to the Trustee pending the order of the Court.

FmHA takes the position that the payments generated by the Debtors' participation in the CRP are rents covered by the relevant provisions in its deeds of trust. For the reasons stated below, the Court is unpersuaded by FmHA's argument and concludes that the funds in question shall be retained by the Trustee as property of the estate.

The issue which the Court must decide is the nature of the payments that Debtors derived from participation in the CRP. The CRP farm program arises out of 16 U.S.C. §§ 3831–3845. Pursuant to these sections, the Secretary of Agriculture is charged with formulating and implementing a conservation reserve program during the 1986 through 1990 crop years through contracts with landowners and operators for ten-year periods in order to assist owners and opera-

this Court to join Debtors as defendants to the cross-claim which FmHA had already asserted against Debtors. The Court approved this motion as it was unopposed by Debtors. It does not appear that FmHA has impleaded Debtors pursuant to Federal Bankruptcy Rule 7014 and Federal Rule of Civil Procedure 14, which would be the applicable procedure to include Debtors in this adversary action. Given

FmHA's failure to proceed correctly, Debtors' non-appearance is better understood. In summary, despite its attempt to correct the assertion of a cross-claim against a non-party, FmHA has never completed service of summons of its claim against Debtors pursuant to Federal Bankruptcy Rule 7014 and Federal Rule of Civil Procedure 14(a).

tors of highly erodible cropland in conserving and improving the soil and water resources of their farms and ranches. The statutes and accompanying regulations require the landowner or operator to remove erodible land from production and to follow certain prescribed conservation practices in order to receive annual compensation under the terms of the contract. The statutes and regulations provide for payment to the landowner or operator in either cash or in-kind commodities. *See, In re Harvie*, 84 B.R. 197, 199 (Bankr.Colo.1988).

The issue of whether CRP payments constitute rents is one of first impression for this Court. The Bankruptcy Court in Colorado had decided that the payments are rents;[2] this issue has split the bankruptcy courts in Northern and Southern Districts of Iowa, with the Northern District of Iowa agreeing with the Colorado decisions.[3] The argument used by FmHA in supporting the position that the CRP payments are rents is that the CRP statutes, regulations, and contracts consistently and frequently refer to rents and rental payments; this was the basis for the conclusion reached in *Harvie* and *Waters*. This argument, however, places form over the substance of the CRP transaction.

Rents due and owing from a lessee, in this case ASCS, to a lessor, Debtors, arise only from the existence of a lease between parties. Merely denominating payments as rent will not make them rent nor create a lessor-lessee relationship; the intentions of the parties, rather than technical designations, shall control. *Clune Equipment v. Spangler*, 615 S.W.2d 106, 108 (Mo.App. 1981). The courts in those cases that held that CRP payments are rents have failed to scrutinize the underlying transaction between the participant and ASCS. Accordingly, before this Court can decide whether CRP payments are rent, it must determine whether a lease exists between Debtors and ASCS. For the reasons stated below, the Court concludes that no lease exists.

Under Missouri law, a lease is both a contract and a conveyance of property. *Reitsch v. T.W.H. Co., Inc.*, 702 S.W.2d 108 (Mo.App.1985). The conveyance of property that is inherent to the lease transaction is the transfer of exclusive use of the demised property from the lessor to the lessee. *Marden v. Radford*, 84 S.W.2d 947, 954 (Mo.App.1935). Essential to the creation of a landlord-tenant relationship is: 1) reversion in the landlord; 2) creation of an estate in the tenant; 3) transfer of exclusive possession and control of the premises to the tenant; and 4) a contract between the parties. *Marden*, 84 S.W.2d at 954. A tenant has the exclusive legal possession of the premises; he, and not the landlord, is in control and responsible for the care and condition of the premises. *Marden*, 84 S.W.2d at 955. A lease creates an estate in the tenant with the transfer of exclusive possession and control of the premises to the tenant subject to such conditions as may be imposed by the terms of the contract creating the tenancy. *St. Louis Terminals v. City of St. Louis*, 535 S.W.2d 593, 597 (Mo.App.1976).

In the matter at hand, the CRP contact does not qualify as a lease because it does not contain a conveyance of property from Debtors to ASCS, nor does it transfer to ASCS those possessory rights which are concomitant with a lease transaction. There is no evidence in the CRP contract before the Court, or in any of the relevant statutes or regulations, that Debtors conveyed any property interest to ASCS in the property enrolled in the CRP. Indeed, the CRP contract before the Court provides that Debtors are required to implement all actions necessary for eligibility in the CRP, thus leaving Debtors with possession of their own property, while providing mere access to ASCS for the purposes of determining compliance with CRP regulations. In addition, the CRP contract at issue does not create an estate in favor of ASCS; it does not transfer exclusive possession, nor

---

**2.** *In re Ratliff*, 79 B.R. 930 (Bankr.Colo.1987) (C.J. Matheson); *In re Clark*, 82 B.R. 131 (Bankr.1987) (J. Brumbaugh); *In re Harvie*, 84 B.R. 197 (Bankr.1988) (J. Clark).

**3.** *In re Waters*, 90 B.R. 946, 971 (Bankr.N.D.Ia. 1988; *In re Butz*, 86 B.R. 595 (Bankr.S.D.Ia. 1988).

any right of actual possession, to ASCS; it does not in any form or manner evidence a conveyance to ASCS. Furthermore, there is no evidence that ASCS enjoys exclusive possession to the premises or is responsible for the care and condition of the property subject to the CRP contract. Rather, the evidence does disclose that Debtors, rather than ASCS, control the property and are responsible for the care and condition thereof. In sum, the CRP contract does not contain all of the attributes of a lease agreement and does not evidence the conveyance of any property interest from Debtors to ASCS. Accordingly, the Court concludes that the agreement between Debtors and ASCS is not a lease; thus, the CRP payments are not rents.

This conclusion is further supported by the actions of FmHA. Pursuant to the terms of the deeds of trust, FmHA reserved the right to provide its written consent prior to the lease of the Debtors' property. FmHA did not provide any such written consent to the inclusion of Debtors' property in the CRP; certainly, FmHA must not have considered the CRP contract a lease transaction as evidenced by the absence of FmHA's prior written consent to the agreement. In summary, FmHA does not have an interest in the CRP payments as the result of the assignments of rents clauses in their deeds of trust.

The Court further concludes that rather than a lease, the CRP contract is nothing more than a *contract not to place farm land into production* between Debtors and ASCS. *Accord., Butz,* 86 B.R. at 598. In analogous situations, the Eighth Circuit has reached similar conclusions. In *Bank of North Arkansas v. Owens,* 884 F.2d 330 (8th Cir.1989), a secured creditor of a Chapter 11 debtor claimed a security interest in payments derived from the federal government's Dairy Termination Program. The conclusion reached by the Eighth Circuit was that the payments were not proceeds from the sale of cattle, but rather payments resulting from a *contract not to produce milk and to leave the dairy busi-*

ness. *North Arkansas,* 884 F.2d at 333. In *In re Kingsley,* 865 F.2d 975 (8th Cir. 1989), a secured creditor of a Chapter 11 debtor claimed a security interest in the federal government's farm deficiency and diversion payments.[4] In that case, the Eighth Circuit decided that the payments were not proceeds from the sale of crops as farm products, but that they were payments resulting from a *contract not to plant certain crops. Kingsley,* 865 F.2d at 978–981. Accordingly, the Court's decision in the present matter is consistent with these recent decisions. Rather than attempting to force a square peg into a round hole by treating CRP payments as rent, the Court recognizes the CRP contract for what it is—a contract between two parties that requires the farmer to take certain portions of his farm out of production.

WHEREFORE, IT IS HEREBY ORDERED that the Trustee shall retain those funds now in his possession representing Debtors' 1988 CRP payments, plus all interest that has accrued thereon; it is further

ORDERED that FmHA shall turnover to the Trustee the amount of $2,100.00, representing that portion of Debtors' 1987 CRP payment received by and in the possession of FmHA; it is further

ORDERED that FmHA's counterclaim against the Trustee is denied; it is further

ORDERED that FmHA's cross-claim against Debtors is denied for the failure to comply with Federal Bankruptcy Rule 7014 and Federal Rule of Civil Procedure 14(a).

---

**4.** 7 U.S.C. §§ 1444e(f)(5)(A), 1445b–3(f)(5)(A)(i), 1444e(c)(1)(C), 1444e(c)(1)(F), and 1445b– 3(c)(1)(D).